Opinion
 

 WISEMAN, J.
 

 This appeal concerns the review of a defense motion made pursuant to the
 
 Wheeler!Batson
 

 [1]
 

 decisions. Noteworthy is the fact the trial court did not explain its reasons for finding the defense failed to establish a prima facie case of group bias, and the People’s reasons for exercising challenges against the subject jurors are not apparent from the record.
 

 Wheeler
 
 squarely places the burden of proof on the moving party to affirmatively establish from all the circumstances of the case, that there is a strong likelihood a juror was challenged because of his or her group association rather than because of any specific bias. We balance this well-established standard against the fact it is presumed the party exercising a peremptory challenge does so on a constitutional basis. Consistent with
 
 Wheeler,
 
 we
 
 *400
 
 look to all the circumstances of the case and conclude the defense has failed to make a prima facie showing of purposeful discrimination. After an exhaustive review of the record, there is a common thread which runs through
 
 all
 
 the People’s challenges—not just those of jurors belonging to a cognizable class. Six of the seven jurors peremptorily challenged by the People were either employed in the health professions or had spouses employed in this field. Since this common characteristic may have been the basis for the People’s challenges, we conclude this is sufficient to sustain the trial court’s ruling on review, and affirm.
 

 Procedural History
 

 Victor Gabriel Trevino (defendant) was charged in a first amended information with one count of second degree robbery in violation of Penal Code sections 211/212.5, subdivision (c).
 
 [2]
 
 It was also alleged defendant was armed with a firearm during the commission of the crime in violation of section 12022, subdivision (a)(1). Further, the information alleged defendant had suffered one prior conviction for which he served a prison term within the meaning of section 667.5, subdivision (b) and another prior conviction which was counted both as a serious felony and as a strike within the meaning of section 667, subdivisions (a), and (b) through (i), section 1192.7, subdivision (c), and section 1170.12, subdivisions (a) through (e).
 

 Defendant pled not guilty to the charge, denied the special allegations and moved to bifurcate the trial on the priors. The court granted the motion and defendant’s jury trial commenced the same day. During jury selection, defendant made a
 
 Wheeler
 
 motion. It was denied by the court. On that same day, the jury found defendant guilty as charged. The jury also found defendant was armed with a firearm during the commission of the crime. Defendant waived a jury trial on the prior convictions and after a trial on the merits, the court found defendant suffered the prior convictions as alleged.
 

 The court sentenced defendant to state prison for an aggregate term of seventeen years, computed as follows: ten years (twice the aggravated term) for the charge pursuant to section 667, subdivisions (b) through (i); one year pursuant to section 12022, subdivision (a)(1); one year pursuant to section 667.5, subdivision (b); and five years pursuant to section 667, subdivision (a).
 

 Defendant filed a timely appeal raising four contentions: (1) the trial court erred by denying his
 
 Wheeler
 
 motion; (2) his case must be remanded for resentencing because the court did not believe it had the discretion to strike
 
 *401
 
 his prior conviction; (3) the court erred by sentencing him twice for the same prior conviction; and (4) he was denied effective assistance of counsel.
 

 Factual History
 

 In the early morning hours of June 2, 1995, Douglas Moore was walking on Ventura Street in Fresno. As he walked by an alley he noticed three men standing there, but could not see their faces because of the darkness. He walked a little further when he was hit in the back of the neck and fell face first on the sidewalk. He tried to get up but was held down by three men, one of whom said he had a gun at Moore’s head. Moore did not see the gun, but felt it in the back of his neck. The men robbed Moore of $75 and then ran off—two of them going in one direction, and the third in another direction. Moore went to the nearest telephone and called 911 to report the robbery. Although he never saw the faces of the men who robbed him, Moore described the clothing they were wearing and said one of them had a ponytail.
 

 Fresno police officers responded to the call and within minutes had identified and detained defendant because he seemed to match the description of one of the robbers given by Moore. Moore was taken to the location where defendant was detained and asked if he recognized defendant. Moore stated defendant “sure looked like one of them.” Defendant was taken into custody and booked. As he was being placed in a holding cell, defendant stated: “You didn’t catch the other guys, my robbery partners got away you f_heads. I’m glad they got away.”
 

 At trial, Moore testified that approximately two weeks after the robbery he was riding in a car in the Chinatown district of Fresno when he saw a man who had a ponytail and was dressed similarly to the man who robbed him. This led him to believe he had misidentified defendant as one of his assailants.
 

 Discussion
 

 I.
 
 The Wheeler motion
 

 Defendant claims the trial court erred when it failed to find a prima facie case of discrimination by the People in the exercise of their peremptory challenges. He contends the People exercised “its first three peremptory challenges” against the four Hispanic sumamed prospective jurors “[djuring
 
 *402
 
 the first portion of voir
 
 [3]
 
 Defendant concedes there was evidence in the record establishing a race-neutral basis for the peremptory challenge of Margarita Rocha. However, he claims the answers of the other two Hispanic prospective jurors to voir dire disclosed no reasonable basis for the exercise of the challenges. Defendant contends, therefore, he did establish a prima facie case under
 
 Wheeler,
 
 requiring the People to explain a race-neutral basis for the challenges.
 

 A.
 
 Standard of review
 

 A trial court’s ruling on a
 
 Wheeler
 
 motion is reviewed for substantial evidence.
 
 (People
 
 v.
 
 Alvarez
 
 (1996) 14 Cal.4th 155, 196 [58 Cal.Rptr.2d 385, 926 P.2d 365].)
 

 “Although such a ruling broadly resolves a predominantly factual mixed law-fact question, as a general matter, at least, it narrowly depends on the answer to a purely factual question .... It follows that the determinations underlying a ruling of this sort, that is, whether the defendant bore his burden of a prima facie showing of the presence of purposeful discrimination and, if he succeeded, whether the prosecutor bore his consequent burden of a showing of its absence, are themselves examined for substantial evidence: they are each reducible to an answer to a purely factual question, as identified above.”
 
 [4]
 
 (14 Cal.4th at pp. 196-197.) In
 
 People
 
 v.
 
 Wimberly
 
 (1992) 5 Cal.App.4th 773 [7 Cal.Rptr.2d 152], the court emphasized the deference that should be given to a trial court’s ruling on a
 
 Wheeler
 
 motion: “The determination of whether a defendant has established a prima facie case ‘is largely within the province of the trial court whose decision is subject only to limited review. [Citations.]’ [Citation.] On appeal, we examine the entire record of voir dire for evidence to support the trial court’s ruling. [Citation.] Because of the trial judge’s knowledge of local conditions and local prosecutors, powers of observation, understanding of trial techniques, and judicial experience, we must give ‘considerable deference’ to the determination that appellant failed to establish a prima facie case of improper exclusion. [Citation.]”
 
 (Id.
 
 at p. 782.)
 

 B.
 
 Burden of proof
 

 The use of peremptory challenges to remove prospective jurors solely on grounds of presumed racial or other “group bias” is prohibited
 
 *403
 
 under both the federal and California Constitutions.
 
 (Batson
 
 v.
 
 Kentucky, supra,
 
 476 U.S. 79;
 
 People
 
 v.
 
 Wheeler, supra,
 
 22 Cal.3d 258.) “Group” bias refers to the situation where a person presumes that certain jurors are biased merely because the jurors are members of an identifiable group distinguished on racial, religious, ethnic, gender or similar grounds.
 
 (People
 
 v.
 
 Crittenden
 
 (1994) 9 Cal.4th 83, 115 [36 Cal.Rptr.2d 474, 885 P.2d 887];
 
 People
 
 v.
 
 Wheeler, supra,
 
 22 Cal.3d at p. 276.)
 

 Any review of a trial court’s ruling on a
 
 Wheeler
 
 motion must begin with a recognition of the presumption “that a party exercising a peremptory challenge is doing so on a constitutionally permissible ground.”
 
 (People
 
 v.
 
 Wheeler, supra,
 
 22 Cal.3d at p. 278.) Therefore, the burden is on the moving party to “raise the point in a timely fashion and make a prima facie case of such discrimination to the satisfaction of the court.”
 
 (Id.
 
 at p. 280.) In order to satisfy this burden, the moving party must prove three things: “First, as in the case at bar, he should make as complete a record of the circumstances as is feasible. Second, he must establish that the persons excluded are members of a cognizable group within the meaning of the representative cross-section rule. Third,
 
 from all the circumstances of the case
 
 he must show a strong likelihood that such persons are being challenged because of their group association rather than because of any specific bias.”
 
 [5]
 
 (22 Cal.3d at p. 280, italics added, fn. omitted.)
 

 Although there is no exhaustive list of circumstances which a court should consider when determining whether a party has made a prima facie showing of purposeful discrimination, there are several factors which the courts have said can be considered:
 

 1) Whether most or all of the members of the identified group from the venire are challenged, or use of a disproportionate number of peremptories against the group. (22 Cal.3d. at p. 280.)
 

 2) Whether the jurors in question share only one characteristic—their membership in the group; otherwise they are heterogeneous “as the community as a whole.” (22 Cal.3d. at p. 280.)
 

 3) Whether the challenging party fails to engage in more than desultory voir dire of the challenged jurors or asks them no questions at all. (22 Cal.3d. at p. 281.)
 

 
 *404
 
 4) Whether the defendant is a member of the group allegedly discriminated against and the victim is a member of the group to which the majority of remaining jurors belong. (22 Cal.3d at p. 281.)
 

 5) Whether members of the group allegedly discriminated against were challenged by the moving party.
 
 (People
 
 v.
 
 Turner
 
 (1994) 8 Cal.4th 137, 168 [32 Cal.Rptr.2d 762, 878 P.2d 521].)
 

 6) The extent to which the jury included members of the group allegedly discriminated against. (8 Cal.4th at p. 168;
 
 People
 
 v.
 
 Harvey
 
 (1984) 163 Cal.App.3d 90, 112 [208 Cal.Rptr. 910].)
 
 [6]
 

 Since the burden of proof is on the moving party, it is axiomatic that when a trial court denies a
 
 Wheeler
 
 motion without finding a prima facie case of group bias, the showing reviewed on appeal is that made by the moving party to the trial court.
 
 (People
 
 v.
 
 Christopher
 
 (1991) 1 Cal.App.4th 666, 673, fn. 4 [2 Cal.Rptr.2d 69].) “The focus of the prima facie inquiry ‘is on the objecting party’s contentions and the record. The burden is upon the objecting party; justifications by the other side are not yet appropriate.’ [Citation.]”
 
 (People
 
 v.
 
 Wimberly, supra, 5
 
 Cal.App.4th at p. 781.) It is with these principles in mind that we evaluate the circumstances surrounding defendant’s
 
 Wheeler
 
 motion.
 

 C.
 
 Circumstances of the Wheeler motion
 

 The panel first considered as jurors for defendant’s trial consisted of 10 women and 2
 
 men. Of these,
 
 four either had Hispanic surnames or appeared to be of Hispanic origin: Rocha, Espinosa, Villaluz, and Zamudio.
 
 [7]
 
 During voir dire the People exercised their first peremptory challenge against Rocha, who was replaced with a non-Hispanic sumamed veniremember, Weston. The People exercised their second peremptory challenge against this individual. The defendant then exercised his second peremptory challenge to remove Zamudio, and the People challenged Espinoza. The People then passed the jury, which included Villaluz, five times, while defendant exercised five more peremptory challenges. Defendant’s eighth peremptory
 
 *405
 
 challenge resulted in the next Hispanic sumamed individual, Garza, being added to the panel. The People then exercised their fourth peremptory challenge against Tomasello.
 

 After defendant exercised his ninth peremptory challenge, the People challenged Garza peremptorily. It was at this point defendant made his
 
 Wheeler
 
 motion. The following exchange then took place between the court and counsel:
 

 “The Court: The Court will deny it. There’s no evidence of—just a minute. I will hear this outside the presence of the jury.
 

 “Mr. Rekoon [defense counsel]: What is that?
 

 “The Court: I’ll hear this outside the presence of the jury. Members of the jury, there’s a matter I must take up outside of your presence. Please step out in the hallway just for a couple minutes.
 

 “As the court indicated, there’s no evidence of bias on the part of the District Attorney but the court will let you be heard if you wish.
 

 “Mr. Rekoon: Just that there have been four Hispanics called to the panel so far and three have been excluded, all by the District Attorney.
 

 “The Court: Mr. Gunderson, do you wish to respond?
 

 “Mr. Gunderson [assistant district attorney]: Yes, Judge. Counsel is incorrect in his assertion in regards to his second challenge, Mrs. Moody, [sz'c] it was my opinion she was hispanic based upon the cast of her face and her features and skin color, despite the last name so given that fact and the fact Mrs. [Villaluz], juror number 9’s still on the panel, I think Counsel has failed to make a prima facie case.
 

 “The Court: Has juror number 3, Mrs. Rocha who was hispanic, she did indicate she had a son who had been convicted of robbery and that appears to be the basis upon which the District Attorney made a challenge. All right. The court denies the motion. Would you bring the jury back in, please?”
 

 Thereafter, defendant exercised his 10th peremptory challenge and another Hispanic sumamed individual, Diaz, was added to the panel. The People exercised two more peremptory challenges, neither of which were against Hispanic sumamed individuals. The People also did not exercise a challenge against the one Hispanic sumamed individual, Morales, who was
 
 *406
 
 seated as an alternate. The final jury included two Hispanic sumamed individuals, Diaz and Villaluz.
 

 By any measure, defendant failed to carry his burden to show, by all the circumstances, a strong likelihood the People were engaging in the systematic exclusion of Hispanic sumamed individuals. Although stated before, it bears repeating that it is presumed the party exercising a peremptory challenge does so on a constitutional basis. No court has held that merely alluding to the fact a party has used its peremptory challenges to exclude members of a particular group, is sufficient to make a prima facie showing of group bias. (See, e.g.,
 
 People
 
 v.
 
 Turner, supra,
 
 8 Cal.4th at p. 167 [claim that all challenged jurors were Black and indicated they could be impartial or in fact favored the prosecution insufficient to establish prima facie case];
 
 People
 
 v.
 
 Howard
 
 (1992) 1 Cal.4th 1132, 1154 [5 Cal.Rptr.2d 268, 824 P.2d 1315] [defendant’s reliance solely on fact the prosecutor challenged first two Black prospective jurors, “completely inadequate” to meet burden of establishing prima facie case];
 
 People
 
 v.
 
 Wright
 
 (1990) 52 Cal.3d 367, 399 [276 Cal.Rptr. 731, 802 P.2d 221];
 
 People
 
 v.
 
 Harvey, supra,
 
 163 Cal.App.3d at p. 112 [prosecutor’s peremptory challenge of two Black prospective jurors did not establish prima facie showing].) This is true even when the peremptory challenges exclude all members of a cognizable group from the jury.
 
 (People
 
 v.
 
 Rousseau
 
 (1982) 129 Cal.App.3d 526, 536-537 [179 Cal.Rptr. 892].)
 

 California courts’ refusal to find a prima facie case of systematic exclusion based solely on a claim the prospective jurors were members of a cognizable group is consistent with the manner in which federal courts treat
 
 Batson
 
 motions. In
 
 U.S.
 
 v.
 
 Vasquez-Lopez, supra,
 
 22 F.3d 900, the defendant was convicted of cultivating marijuana and using a firearm during and in relation to a drug trafficking offense.
 
 (Ibid.)
 
 During voir dire, the prosecutor exercised a peremptory challenge against the only Black prospective juror. Defendant objected and the prosecutor started to explain the reasons for the challenge. The court interrupted, and asked defendant what facts supported the inference of intentional discrimination. Defendant stated his
 
 Batson
 
 motion was based on the fact the juror was the only Black prospective juror on the entire panel, she lived in the same part of Los Angeles as defendant, she was an accountant and mother of four children, and there was no reason to believe she would be an unqualified juror. The court ruled defendant had failed to state a prima facie case of purposeful discrimination and excused the juror.
 
 (Id.
 
 at p. 901.)
 

 “But just as ‘one’ is not a magic number which establishes the absence of discrimination, the fact that the juror was the one Black member of the
 
 *407
 
 venire does not, in itself, raise an inference of discrimination. Using peremptory challenges to strike Blacks does not end the inquiry; it is not per se unconstitutional, without more, to strike one or more Blacks from the jury. [Citation.] A district court must consider the relevant circumstances surrounding a peremptory challenge. [Citation.]” (22 F.3d at p. 902.)
 

 In defendant’s case the motion failed to satisfy two of the three prongs of the
 
 Wheeler
 
 test for finding a prima facie case of discrimination. Undoubtedly, he did establish the prospective jurors were members of a cognizable group: Hispanic sumamed individuals. But, his attempt to make a record of the circumstances of the challenges was less than complete and not totally accurate. Defendant claimed the People used their challenges to exclude three of the four Hispanics who were called to the panel. In fact, there were five Hispanics called as prospective jurors at the time the People exercised the challenge against Garza. Further, one of those, who was apparently acceptable to the People, had been removed by defendant. Also, at the point in time when defendant made his
 
 Wheeler
 
 motion, the People had passed a jury containing one Hispanic sumamed individual five times.
 

 Second, defendant did not satisfy the third prong of the
 
 Wheeler
 
 test because he failed to explain
 
 any
 
 circumstances which would indicate a strong likelihood the individuals were challenged solely because of their group association. He did not claim the People’s questioning of the Hispanic sumamed individuals was desultory or nonexistent. He did not claim these individuals were questioned differently than the other prospective court members. He did not claim the Hispanic sumamed individuals challenged shared no common characteristic other than their race. Although defendant also has a Hispanic surname, defendant did not claim the victim was a member of the group to which the majority of the remaining jurors belong. In short, the substance of defendant’s claim was that the People used a disproportionate share of their challenges against Hispanic sumamed prospective jurors, and even this fact was misrepresented to the court.
 

 “A showing as limited as defendant’s offers little practical assistance to the trial court, which must determine from ‘all the circumstances of the case’ whether there is ‘a strong likelihood’ that prospective jurors have been challenged because of their group association rather than because of any specific bias. [Citation.]”
 
 (People
 
 v.
 
 Howard, supra,
 
 1 Cal.4th at p. 1154.)
 

 This court’s consideration of defendant’s claim should have to go no further than finding he has completely failed to carry his burden to show a strong likelihood the challenges were the result of the potential jurors’ membership in a cognizable group. (See
 
 People
 
 v.
 
 Rousseau, supra,
 
 129
 
 *408
 
 Cal.App.3d at pp. 536-537.) Recently, the California Supreme Court, in
 
 People
 
 v.
 
 Alvarez, supra,
 
 14 Cal.4th 155, did just that. In
 
 Alvarez,
 
 defendant was convicted of capital murder and sentenced to death.
 
 {Id.
 
 at pp. 175-176.) During voir dire of the first panel of prospective jurors, defendant made a
 
 Wheeler!Batson
 
 motion, claiming the prosecutor had challenged seven Black and Hispanic prospective jurors based on their group membership.
 
 {Id.
 
 at p. 194.) The trial court found defendant had made a prima facie showing of purposeful discrimination and required the prosecutor to explain his reasons for each challenge.
 
 {Ibid.)
 
 The court ruled the prosecutor had met his burden of proving race-neutral bases for each challenge and denied defendant’s
 
 Wheeler!Batson
 
 motion.
 
 {Id.
 
 at p. 195.)
 

 Voir dire of a second panel of prospective jurors continued and, after the prosecutor exercised a peremptory challenge against another Black prospective juror, defendant made another
 
 Wheeler
 
 motion. (14 Cal.4th at p. 195.) The court held the defendant had failed to make a prima facie case of purposeful discrimination and denied the motion. Stating he may have acted “somewhat prematurely,” defense counsel sought a denial of the motion without prejudice to renew it at a later time. He never renewed the request.
 
 {Ibid.)
 

 On appeal, the court addressed each motion separately. With respect to the second
 
 Wheeler
 
 motion, the court found there was substantial evidence to support the trial court’s determination defendant did not make a prima facie showing of purposeful discrimination. In reaching this decision, the court relied on the fact the defendant failed to meet his burden.
 

 “All that he showed was that [the challenged prospective juror] was African-American. That, of course, is not enough. ... As stated, there is a presumption that a prosecutor uses his peremptory challenges in a constitutional manner. That presumption is suspended when the defendant makes a prima facie showing of the presence of purposeful discrimination. It is reinstated, however, when the prosecutor makes a showing of its absence. So was it here. Defendant was free to attempt to make another prima facie showing. But he had to make it, and make it in fact. This he did not do.” (14 Cal.4th at pp. 198-199, fn. omitted.)
 

 In contrast to its holding in
 
 People
 
 v.
 
 Alvarez, supra,
 
 14 Cal.4th 155, the California Supreme Court observed in
 
 Howard
 
 that a court’s review of a defendant’s attempt to establish a prima facie case is not limited to a review solely of counsel’s presentation at the time of the motion.
 
 {People
 
 v.
 
 Howard, supra,
 
 1 Cal.4th at p. 1155.) The purpose of this review is to ensure
 
 *409
 
 that even if defendant’s showing is inadequate, there are no “other circumstances” which might support a finding of a prima facie case.
 
 (Ibid,
 
 [the trial court should not “blind itself to everything except defense counsel’s presentation”].) The court went on to state: “As with other findings of fact, we examine the record for evidence to support the trial court’s ruling. Because
 
 Wheeler
 
 motions call upon trial judges’ personal observations, we view their rulings with ‘considerable deference’ on appeal. [Citations.] If the record ‘suggests grounds upon which the prosecutor might reasonably have challenged’ the jurors in question, we affirm. [Citation.]”
 
 (Ibid.)
 

 After
 
 People
 
 v.
 
 Howard, supra,
 
 1 Cal.4th 1132, courts reviewing
 
 Wheeler
 
 motions for evidence of a prima facie case of purposeful discrimination have scrutinized voir dire to determine if they can divine any nondiscriminatory basis for the challenges against members of a cognizable group. (See
 
 People
 
 v.
 
 Davenport
 
 (1995) 11 Cal.4th 1171, 1201-1202 [47 Cal.Rptr.2d 800, 906 P.2d 1068];
 
 People
 
 v.
 
 Wimberly, supra,
 
 5 Cal.App.4th at p. 784.) There are two significant problems in attempting to determine if the record “suggests” a nondiscriminatory basis for a challenge. First, neither
 
 Wheeler
 
 nor
 
 Batson
 
 requires a party exercising a peremptory challenge to provide the reasons for the challenge unless the court finds a prima facie case of discrimination has been made. Similarly, neither
 
 Wheeler
 
 nor
 
 Batson
 
 requires a trial court to explain its rationale for finding a moving party has failed to make a prima facie case. Therefore, a reviewing court often has to move into the realm of speculation concerning why a party “may” have a reason to challenge a juror other than his or her membership in a cognizable group. (See
 
 People
 
 v.
 
 Buckley
 
 (1997) 53 Cal.App.4th 658, 667 [61 Cal.Rptr.2d 860] [“It is clearly uncomfortable for an appellate court to postulate hypothetical reasons a prosecutor might have challenged each juror.”].)
 

 Second, as the court in
 
 Wheeler
 
 recognized, the reason a party challenges a juror may not be apparent from the record: “Indeed, even less tangible evidence of potential bias may bring forth a peremptory challenge: either party may feel a mistrust of a juror’s objectivity on no more than the ‘sudden impressions and unaccountable prejudices we are apt to conceive upon the bare looks and gestures of another’ (4 Blackstone, Commentaries *353) . . . .”
 
 (People
 
 v.
 
 Wheeler, supra,
 
 22 Cal.3d at p. 275.) It may not be the answers given by a potential juror during voir dire, but the manner in which they are given or the facial expressions that accompany them, that result in a peremptory challenge being exercised. In other words, the reason a juror is challenged by a party may be patently obvious to everyone in a courtroom, yet not be apparent to someone reading a cold record of trial. The first line of defense against the invidious use of peremptory challenges must be the
 
 *410
 
 trial court. This is true because the trial court is in the best position to determine from “all the circumstances,” both those which appear in the record and those which do not, whether a party is using its peremptory challenges improperly. It is for these reasons that a trial court’s decision is entitled to such great deference. This is especially true when, as in defendant’s case, the moving party has failed to carry its burden. “We note, however, that we would not be forced to comb the record for evidence of racial bias and/or hypothecate why jurors were excluded if appellants had articulated with some specificity the bases for the
 
 Wheeler
 
 challenge.”
 
 (People
 
 v.
 
 Buckley, supra,
 
 53 Cal.App.4th at p. 667.)
 
 [8]
 

 Despite defendant’s failure to cany his burden under
 
 Wheeler
 
 to establish a prima facie case of purposeful discrimination, we must review the record to determine if there was any basis for his claim. In this regard, however,
 
 People
 
 v.
 
 Howard, supra,
 
 1 Cal.4th 1132, do^s not require this court to point to any specific answer given by each of the challenged jurors which would indicate a race-neutral basis for challenge in order to find the trial court did not err in denying the motion. The mandate of
 
 Wheeler
 
 requires that we consider all the circumstances surrounding the exercise of challenges during voir dire, Not the least of these is the fact the final jury included two jurors and an alternate with Hispanic surnames.
 

 “While the fact that the jury included members of a group allegedly discriminated against is not conclusive, it is an indication of good faith in exercising peremptories, and an appropriate factor for the trial judge to consider in ruling on a
 
 Wheeler
 
 objection. [Citations.]”
 
 (People
 
 v.
 
 Turner, supra,
 
 8 Cal.4th at p. 168.) But for defendant’s exercise of a peremptory challenge against Zamudio, the jury which tried him would have included only one less Hispanic sumamed member than the number included in the original venire. Additionally, contrary to defendant’s assertion, the People did not exercise their first three peremptory challenges against members of the cognizable group. The People exercised two of their first three challenges against Rocha and Espinoza. The People then passed the jury including Villaluz five times before exercising another peremptory challenge against a non-Hispanic sumamed individual. It was only when the People exercised their fifth challenge against Garza, that defendant made his
 
 Wheeler
 
 motion. Ultimately, another Hispanic sumamed individual was
 
 *411
 
 added to the panel and not challenged by the People. It can hardly be said a court could conclude from this pattern of challenges there was a “strong likelihood” the People were engaging in the systematic exclusion of a cognizable class from defendant’s jury.
 

 There is also nothing apparent from the questions asked by the People during voir dire which raises the specter of purposeful discrimination. The questions asked by the People of all the potential jurors were fairly consistent. The People questioned all of the Hispanic sumamed potential jurors who were challenged and their questioning was neither desultory nor different in any significant way from that of other potential jurors, including those others that were challenged peremptorily.
 
 [9]
 

 In reviewing the record it is also apparent the challenged jurors did share a characteristic besides their membership in a cognizable group: their or their spouse’s occupation. Rocha indicated she was the director of Centro La Familia, a social service agency. Espinoza indicated she was a therapist and her spouse worked with the developmentally disabled. Although Garza stated he worked in the maintenance department of the Fresno Unified School District, his spouse worked for a doctor. Thus, each of the members challenged had a connection with an organization that provided health care, either mental or physical. It is also significant that this characteristic was shared with three of the four non-Hispanic sumamed individuals challenged by the People: Weston (nurse); Tomasello (nurse); and Gulard (clerk at Fresno County Mental Health Department). If this court must engage in speculation, it could be hypothesized the People were exercising their challenges based on a belief those members who had some connection with providing care or social services would not be sympathetic to their case. (See
 
 People
 
 v.
 
 Perez
 
 (1996) 48 Cal.App.4th 1310, 1315 [56 Cal.Rptr.2d 299] [no prima facie case where challenged members shared characteristic of being single and working in “social services or caregiving fields”].) Given the fact
 
 *412
 
 this characteristic was present in six of the seven jurors peremptorily challenged by the People, this is a reasonable conclusion. This common characteristic
 
 may
 
 have been the basis for the People’s challenges. That is all that is required to sustain the trial court’s ruling on review.
 
 [10]
 

 II.-IV.
 
 *
 

 Disposition
 

 The judgment is affirmed.
 

 Stone (W. A.), Acting P. J., and Buckley, J., concurred.
 

 Appellant’s petition for review by the Supreme Court was denied August 20, 1997.
 

 [1]
 

 People
 
 v.
 
 Wheeler
 
 (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748];
 
 Batson
 
 v.
 
 Kentucky
 
 (1986) 476 U.S. 79 [106 S.Ct. 1712, 90 L.Ed.2d 69].
 

 [2]
 

 All further statutory references are to the Penal Code unless otherwise indicated.
 

 [3]
 

 Defendant’s version of the jury selection process is inaccurate in several key respects. These will be discussed in further detail,
 
 post.
 

 [4]
 

 This standard is consistent with “clearly erroneous” standard applied by federal courts when reviewing a trial court’s ruling on a
 
 Batson
 
 motion.
 
 (U.S.
 
 v.
 
 Wills
 
 (9th Cir. 1996) 88 F.3d 704, 714.)
 

 [5]
 

 Similarly, federal courts consider the “totality of the circumstances” when determining if a challenge is impermissibly based on a veniremember’s group association.
 
 (McCain
 
 v.
 
 Gramley
 
 (7th Cir. 1996) 96 F.3d 288, 292; see
 
 U.S.
 
 v.
 
 Vasquez-Lopez
 
 (9th Cir. 1994) 22 F.3d 900, 902, cert. den. 14 U.S. 891 [115 S.Ct. 239, 130 L.Ed.2d 162].)
 

 [6]
 

 When reviewing
 
 Batson
 
 challenges, federal courts have also found it significant that a party is willing to accept jurors from the group allegedly discriminated against.
 
 (U.S.
 
 v.
 
 Chinchilla
 
 (9th Cir. 1989) 874 F.2d 695, 698, fn. 4;
 
 U.S.
 
 v.
 
 Montgomery
 
 (8th Cir. 1987) 819 F.2d 847, 851;
 
 United States
 
 v.
 
 Ratcliff
 
 (5th Cir. 1986) 806 F.2d 1253, 1256, cert. den. 481 U.S. 1004 [107 S.Ct. 1625, 95 L.Ed.2d 199];
 
 United States
 
 v.
 
 Dennis
 
 (11th Cir. 1986) 804 F.2d 1208, 1210-1211, cert. den. 481 U.S. 1037 [107 S.Ct. 1973, 95 L.Ed.2d 814].)
 

 [7]
 

 When responding to defendant’s
 
 Wheeler
 
 motion, the People indicated that while her surname may not be Hispanic, it was apparent from her features that Zamudio was Hispanic. Defendant did not dispute this claim, and therefore we accept the People’s representation as true.
 

 [8]
 

 This case illustrates the need for a trial court to make a record of its basis for finding a moving party has not established a prima facie case under
 
 Wheeler.
 
 Although there is no requirement a trial court do so, it would be prudent for a court to explain what factors described,
 
 ante,
 
 that it relied on in denying a
 
 Wheeler
 
 motion. This is especially true when, as here, a party totally fails to make any showing and the reasons for the court’s decision may not be readily apparent from a review of the record.
 

 [9]
 

 This same approach is consistent with that taken recently by the Ninth Circuit in reviewing a district court’s determination that a defendant had failed to establish a prima facie case of purposeful discrimination.
 

 “The judge appropriately considered the impact of the government’s challenge on the composition of the jury. . . . The prosecutor’s questions and statements during the selection of the jury failed to support an inference of purposeful discrimination. [Citation.] The government’s other peremptory challenges did not suggest a general pattern of discrimination against racial minorities. [Citation.] The challenged prospective juror was not treated differently than other prospective jurors who were similar in relevant aspects except race. [Citation.] The one fact supporting Vasquez-Lopez’s
 
 Batson
 
 claim was the juror’s status as the sole Black prospective juror. More was required.” (17.5. v.
 
 Vasquez-Lopez, supra,
 
 22 F.3d at p. 902.)
 

 [10]
 

 We note the trial court properly identified another nondiscriminatory basis for the challenge against Rocha: Her son had been arrested for committing an offense similar to that with which defendant was charged.
 

 *
 

 See footnote,
 
 ante,
 
 page 396.