**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ANTHONY CASTELLANOS,
*Petitioner-Appellant*,

v.

LARRY SMALL, Warden,
*Respondent-Appellee*.

No. 12-55783

D.C. No.
2:08-cv-08177-JVS-DTB

OPINION

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted
June 2, 2014—Pasadena, California

Filed September 9, 2014

Before: Stephen Reinhardt, John T. Noonan,
and Mary H. Murguia, Circuit Judges.

Opinion by Judge Murguia

# SUMMARY[*]

## Habeas Corpus

The panel reversed the district court's judgment denying an application for habeas corpus, and remanded with instructions to grant the application, in a case in which the petitioner asserted that the prosecution engaged in purposeful discrimination in violation of *Batson v. Kentucky* when it exercised four peremptory strikes against Hispanic venirepersons.

After reviewing the state court's determination of no purposeful discrimination with respect to the striking of Venireperson 4968, together with a side-by-side comparison of the venirepersons at issue and the empaneled jurors, and other relevant circumstantial and direct evidence of intent to discriminate, the panel concluded that the prosecutor's factually-erroneous stated reason for striking Venireperson 4968 – that she didn't have children – was pretextual. The panel concluded that the petitioner's state court proceedings resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented, 28 U.S.C. § 2254(d)(2), and that the district court therefore erred in denying the petitioner's application for habeas relief.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Gia Kim (argued), Deputy Federal Public Defender; Sean K. Kennedy, Federal Public Defender, Los Angeles, California, for Petitioner-Appellant.

Scott Taryle (argued), Supervising Deputy Attorney General; Timothy M. Weiner and Stephanie C. Brenan, Deputy Attorneys General; Lance E. Winters, Senior Assistant Attorney General; Dane R. Gillette, Chief Assistant Attorney General; Kamala D. Harris, Attorney General, Los Angeles, California, for Defendant-Appellee.

**OPINION**

MURGUIA, Circuit Judge:

Petitioner Anthony Castellanos was convicted in California state court of murder, assault with a firearm, and street gang solicitation. On direct appeal, the California Court of Appeal affirmed Castellanos's convictions, concluding that the prosecution had not engaged in purposeful discrimination in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986), when it exercised four peremptory strikes against Hispanic venirepersons. The district court denied Castellanos's application for habeas relief. Because we conclude that Castellanos's state court proceedings "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented," 28 U.S.C. § 2254(d)(2), we reverse the district court's judgment and remand with instructions to grant Castellanos's application.

## I.

Petitioner Anthony Castellanos, who was 17 years old at the time of the incident giving rise to this case, was at his apartment with his 11-year-old and 12-year-old neighbors, Joey and Nicky. Castellanos was trying to recruit Nicky to join his gang, the King Kobras, but Nicky had previously refused. Castellanos, who had been cooking French fries in the kitchen, walked into the living room where Nicky was sitting on the couch, pulled a gun from his waist, and pointed it at Joey and Nicky. Joey ducked, fearful of what might happen. Castellanos then turned and pointed the gun directly at Nicky, put his finger on the trigger, and said, "What do you think about this?" He fired, shooting Nicky in the head.

Castellanos was charged in Los Angeles County Superior Court with murder, *see* Cal. Penal Code § 187(a), assault with a firearm, *see* Cal. Penal Code § 245(a), and street gang solicitation, *see* Cal. Penal Code § 186.26(a). On the murder and assault charges, the government's information alleged that Castellanos had personally used a firearm, and on the assault charge, it alleged that he committed the offense for the benefit of a criminal street gang. Castellanos pleaded not guilty to all charges and proceeded to a jury trial.

## A.

Voir dire took place in March 2005. After the venirepersons were introduced to the parties and the potential witnesses, the prosecutor began questioning the venirepersons. He started by asking each venireperson to answer "the questions on the board," which appear to have been

(1) Where do you live?

(2) What is your occupation?

(3) Are you married; if so, what is your spouse's occupation?

(4) Do you have adult children; if so, how many?

(5) Have you ever sat on a jury?

In total, 29 venirepersons were questioned.[1]  In some instances, after a venireperson had answered the questions on the board, the prosecutor would follow up by asking additional questions, such as the occupations of the venireperson's adult children, the type of case (civil or criminal) on which the venireperson sat as a juror, and whether that jury had reached a verdict.

After each venireperson had answered the questions directed specifically to him or her, the prosecutor posed additional questions to the group.  Those questions included, as is relevant to this appeal, (1) whether any venireperson was "related to or . . . ha[d] close friends in law enforcement," (2) whether any venireperson or a relative "ha[d] . . . ever

---

[1] The prosecutor began by questioning 18 jurors, 12 of whom were seated in the main jury box and 6 of whom were seated in the area designated for alternate jurors.  If a venireperson seated in the main jury box was excused, the court moved a venireperson from the area designated for alternate jurors to replace the excused venireperson inside the box.  After all 6 venirepersons seated in the alternate juror area had been either excused or moved, the court called 6 more venirepersons to fill their seats and answer the same questions.

been victims of a crime," (3) whether any venireperson or relative had "ever been charged with or arrested for an offense," and (4) whether any venireperson was "familiar with gangs or criminal street gangs." The prosecutor concluded by asking whether "there [is] anything that you believe is important to disclose at this time that has not yet been asked that would affect the impartiality or sitting as a juror on this case?" Over the course of questioning, the prosecutor elicited the following information from each of the venirepersons at issue in this appeal.

*Venirewoman 4968 (Seat 2)*

Venirewoman 4968 was a Hispanic female from Santa Fe Springs, California. She worked for a bread company. At the time of trial, she was divorced and had two adult children.[2] One of her children—her daughter—did not work at the time, and her son worked for "export magazines" in "[a] lot of cities." Her ex-husband worked for Boeing, and she had never before served on a jury.

*Venireman 3693 (Seat 5)*

Venireman 3693 was a Hispanic male from La Puente, California. He worked as a salesman for Bernard and Sons, an electrical product retail company. His wife worked as a day care provider for La Puente Unified School District. At

---

[2] There is some ambiguity in the transcript as to whether Venirewoman 4968 had two children (both adult) or four children (two adult and two "kids"). Venirewoman 4968 initially stated, "I have two girls, kids." The prosecutor responded by asking, "And what are the occupations of your adult children, your adult children?" Venirewoman 4968 answered, "My daughter, she doesn't work. And my son works . . . for the [export magazines]." The ambiguity does not affect the outcome of this case.

the time of trial, he had no adult children and had never before sat on a jury.

*Venireman 6963 (Seat 12(A))*

Venireman 6963 was from Montebello, California, and worked as a store manager for a Van's store. His wife worked as an office manager for an optometrist's office. He had once before sat on a jury in a criminal case; the jury had reached a verdict in that case. Venireman 6963 did not answer the question whether he had any adult children, and the prosecutor did not follow up on his failure to do so. During group questioning, Venireman 6963 informed the court that his "brother was a gang member for a long time," and that "now [his brother is] a pastor and goes to jail now and helps." He also stated that he did not think that would "cause [him] not to be a fair or impartial juror in this case."

*Venireman 5816 (Seat 12(B))*

Venireman 5816 was a Hispanic male who worked for APL Logistics in West Covina, California. He was single, did not have adult children, and had never before sat on a jury. During group questioning, he informed the court that he "ha[s] family and friends in gangs." He did not think that would affect his ability to be impartial in this case.

Each party was allowed twenty peremptory strikes. *See* Cal. Civ. Proc. Code § 231(a). Twelve members of the venire occupied the main jury box at any given time; a new venireman would enter the main jury box each time another was excused. At the outset, at least five of the twelve venirepersons seated in the main jury box were Hispanic. The prosecutor used six peremptory strikes, four of which

were against the Hispanic venirepersons described above, before defense counsel made the *Batson*/*Wheeler* motion at issue in this appeal.**[3]**  At the time of the motion, seven of the twelve venirepersons seated in the main jury box were Hispanic, and the prosecution had 14 peremptory strikes remaining.

When defense counsel made the *Batson* motion, he contended that "the prosecutor [was] exercising his challenges to exclude mainly people of Hispanic descent." The parties and the court then engaged in the following colloquy.

> [DEFENSE COUNSEL]: [The prosecutor] exercised – he excluded juror No. 2, was a female Hispanic.  He excluded juror No. 5, who was a Hispanic male.  He excluded juror No. 12, who was a Hispanic male.  He excluded juror No. 1, 2, 3, 4 people based on race, two Anglos, and I will submit the matter.
>
> THE COURT: All right.  People.
>
> [PROSECUTOR]: Your Honor, the way the current law is, the Court has to find a prima facie showing.

---

**[3]** A *Wheeler* motion, established in *People v. Wheeler*, 22 Cal. 3d 258 (1978), is the California analogue of a motion under *Batson v. Kentucky*, 476 U.S. 79 (1986).  *See Aleman v. Uribe*, 723 F.3d 976 (9th Cir. 2013), *cert. denied*, 134 S. Ct. 903 (2014).  Throughout this opinion, we refer to Castellanos's motion as a *Batson* motion, although technically it was made under *Wheeler*.

THE COURT: Well, there are four Hispanics excused.

[PROSECUTOR]: The last juror had friends –

THE COURT: He had friends in gangs.

[PROSECUTOR]: In gangs.

THE COURT: That's the reason?  Okay.

[PROSECUTOR]: Let's see.   What other individuals?

THE COURT: Well, No. 2 was 4968.  Was that a Hispanic female?

[DEFENSE COUNSEL]: Yes.

THE COURT: 4968?

[PROSECUTOR]: I have that as a female white.

THE COURT: 4968 was the name.

[DEFENSE COUNSEL]: She was Hispanic.

. . . .

[PROSECUTOR]: 4968 – I thought the person was white, but regardless, the person, she didn't have any children.  The victim in here is going to be a child testifying, so I want

jurors to understand children, so I've kicked a lot of jurors who don't have children, and she had no children.

As far as the –

Which one is the next one that is being contested?

THE COURT: I guess 5816, 12.

[DEFENSE COUNSEL]: No. 5 as well.

[PROSECUTOR]: Is the fifth one? The fifth one I kicked, was the one in gangs.

THE COURT: No. He's talking about juror No. 5, 3693.

[DEFENSE COUNSEL]:[4] This person had trouble following didn't appear to be paying attention when I was asking questions and stuff. This was the person that was up on –

THE COURT: On top.

[PROSECUTOR]: Right. And that person also had no children, but that was more because the person didn't appear to be following directions, was kind of sitting there,

---

[4] The parties dispute whether the transcript is correct that defense counsel, as opposed to the prosecutor, made this statement.

and that's why I had to ask him specifically, "Are you shaking your head 'yes' or 'no'?"

What's the next one?  Is there another?

[DEFENSE COUNSEL]: I think juror No. 12, we've already discussed that.  That's it.

THE COURT: All right.  The motion is denied.

The court then continued with voir dire until the parties accepted the empaneled jury.  In the end, the prosecution had exercised 12 of its 20 peremptory strikes, leaving 8 unused. After the jury was empaneled, the court noted that, "of the twelve [empaneled] jurors, seven are Hispanics, there are four Caucasians, and one Asian."

**B.**

A jury convicted Castellanos of second-degree murder, assault with a firearm, and street gang solicitation.  He was sentenced to 25 years to life in state prison.  On direct appeal of his judgment of conviction, Castellanos assigned error to, among other things, the state trial court's order denying his *Batson* motion.  The California Court of Appeal affirmed the convictions in a written opinion, noting, with respect to the *Batson* issue, that "[t]he trial court's determination is entitled to considerable deference because of the court's knowledge of local conditions and local prosecutors, powers of observation, understanding of trial techniques and judicial experience." *People v. Castellanos*, 2007 Cal. App. Unpub. LEXIS 7397, at *14 (citing *People v. Trevino*, 55 Cal. App. 4th 396, 402 (1997)).  The court of appeal held that

Castellanos had "failed to demonstrate error in the trial court's ruling." *Id.* The California Supreme Court denied Castellanos's petition for review. *People v. Castellanos*, 2007 Cal. LEXIS 13708, at *1.

## C.

In December 2008, Castellanos timely applied for habeas relief in the U.S. District Court for the Central District of California.[5] After directing the parties to submit briefing on the question whether Castellanos was entitled to an evidentiary hearing on his *Batson* claim, the magistrate judge issued an order stating that the California Court of Appeal's decision was "contrary to" clearly established federal law and that, as a result, AEDPA did not preclude an evidentiary hearing. *See* 28 U.S.C. § 2254(d)(1) (prohibiting habeas relief unless the state-court adjudication of the applicant's claim "resulted in a decision that was contrary to . . . clearly established Federal law, as determined by the Supreme Court"); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2010) (prohibiting an evidentiary hearing under § 2254(e) unless § 2254(d) is satisfied). In the same order, the court invited the State to "augment the record by providing the prosecutor's actual reasons for dismissing Juror Nos. 4[9]68 and [36]93 to avoid the adverse inference that may flow from the record as it stands," and invited Castellanos to "present additional statistical or other evidence to meet his ultimate burden of proving discrimination."

In response to the court's invitation, the State submitted a declaration from Los Angeles County Deputy District Attorney Sean Coen, the prosecutor at Castellanos's criminal

---

[5] Castellanos did not seek post-conviction relief in California state court.

trial, in an effort to more clearly explain his reasons for striking Venirepersons 4968 and 6963. At a status conference that took place after the State filed Mr. Coen's declaration, the magistrate judge granted limited discovery on "matters relating to the jury selection process" at Castellanos's criminal trial. The judge then initially granted an evidentiary hearing on those matters, but later vacated the hearing, finding it unnecessary after the parties lodged, under seal, records from the California Department of Motor Vehicles (DMV) showing photographs of each venireperson. The magistrate judge took the matter under consideration using the parties' pleadings, Mr. Coen's declaration, and the DMV records.

In his Report and Recommendation, the magistrate judge recommended that the district court deny Castellanos's application for habeas relief. The judge first concluded that the California Court of Appeal, by relying on *People v. Trevino*, "applied an incorrect standard of proof." The judge therefore concluded, as he had before, that the state trial court's decision was "contrary to" clearly established federal law, *see* 28 U.S.C. § 2254(d)(1), thereby permitting the court to review de novo Castellanos's *Batson* claim. Reviewing de novo, the magistrate judge concluded that, considering the parties' pleadings, Mr. Coen's declaration, the DMV records, and the totality of the circumstances as to each excused venireperson, the prosecutor had not acted with purposeful discrimination in violation of *Batson*. The district court accepted, with only one exception not relevant to our resolution of this case, the findings, conclusions, and recommendations of the magistrate judge, and denied Castellanos's application for habeas relief. The court granted a certificate of appealability "with respect to [Castellanos's] claim that the prosecutor's discriminatory use of peremptory

challenges to exclude Hispanic prospective jurors violated his federal constitutional right under the Fourteenth Amendment, pursuant to *Batson v. Kentucky*." We now consider that claim.

## II.

We review de novo a district court's order denying an application for habeas relief. *Murray v. Schriro*, 745 F.3d 984, 996 (9th Cir. 2014). We are limited, however, by the deference required under AEDPA, which bars relief unless the underlying state court proceedings either (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). In conducting our analysis under AEDPA, we must look to the last reasoned state-court decision, *Murray*, 745 F.3d at 996; where "no state-court decision furnishes a basis for the state court's underlying reasoning," we must "engage in an 'independent review of the record' and ascertain whether the state court's decision was 'objectively unreasonable,' " *id.* at 996–97 (quoting *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013)).

## A.

We must first determine which state-court decision serves as the basis for our review. Under AEDPA, when more than one state court has adjudicated the applicant's claim, we must look to the last "reasoned" decision. *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005). Thus, a state supreme

court's summary denial of discretionary review, which generally does not state a reason for that denial, is not a "reasoned" decision under AEDPA, and we must "look through" that unexplained decision to the last state court to have provided a "reasoned" decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 806 (1991).

In this case, the California Court of Appeal was the last state court to issue a decision explaining the basis for the trial court's denial of Castellanos's *Batson* challenge. That decision, while it does not engage in a comparative juror analysis of the evidence presented in the trial court, *contra Murray*, 745 F.3d at 1006, is not wholly unexplained, *see Ylst*, 501 U.S. at 806. It therefore constitutes the last "reasoned" decision for AEDPA purposes and may form the basis of our review. *Cf. Jamerson*, 713 F.3d at 1223, 1226 (reviewing a "reasoned" decision of the California Court of Appeal in which the court "declined to conduct a comparative juror analysis," "[l]ist[ed] the reasons that the prosecutor proffered for striking each black juror[,] and ultimately deferr[ed] to the trial court's independent assessment of the prosecutor's credibility").

**B.**

We turn, therefore, to the district court's conclusion that the California Court of Appeal's decision on direct appeal of Castellanos's judgment of conviction was "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state court decision is contrary to clearly established federal law if it "applies a rule that contradicts the governing law set forth in [U.S. Supreme Court] cases" or arrives at a different result in a case that "confronts a set of

facts that are materially indistinguishable from a decision of [the Supreme] Court." *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). If the state court applies a legal standard that contradicts clearly established federal law, we review de novo the applicant's claims, applying the correct legal standard to determine whether the applicant is entitled to relief. *Cooperwood v. Cambra*, 245 F.3d 1042, 1047 (9th Cir. 2001).

The "clearly established federal law"—in other words, the " 'governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision,' " *Xiong v. Felker*, 681 F.3d 1067, 1073 (9th Cir. 2012)—central to this case is *Batson v. Kentucky*, 476 U.S. 79 (1986). The *Batson* framework is well established: First, the defendant must make a prima facie showing of purposeful discrimination by "showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose." 476 U.S. at 93–94. Then, the "burden shifts to the State to explain adequately the racial exclusion" by offering race-neutral justifications for the strikes. *Id.* at 94. Finally, the court must decide, in light of the race-neutral justifications offered by the State, whether the State engaged in purposeful discrimination when it exercised the peremptory strike. *Id.* at 98. As noted, the California Supreme Court's decision in *Wheeler* is the California analogue to *Batson*; today, the two are procedurally equivalent. *Fernandez v. Roe*, 286 F.3d 1073, 1075 (9th Cir. 2002).

When *Wheeler* was decided in 1978, however, it imposed on defendants a higher burden to establish a prima facie case of purposeful discrimination than that required under *Batson*. *Wheeler* compelled a defendant at step one to establish a "strong likelihood," as opposed to a mere inference, of purposeful discrimination on the part of the State. 22 Cal. 3d

at 280.  In *Johnson v. California*, 545 U.S. 162, 173 (2005), the U.S. Supreme Court abrogated that portion of *Wheeler*, holding that the Federal Constitution precludes the imposition of such a heavy burden at step one.  Thus, the clearly established federal law existing in 2007, when the California Court of Appeal issued its decision on appeal of Castellanos's judgment of conviction, was *Batson* as clarified by *Johnson*.

Castellanos contends that the district court was correct to conclude that the California Court of Appeal's decision was "contrary to" clearly established federal law because the California court cited *People v. Trevino*, a pre-*Johnson* case applying *Wheeler*'s "strong likelihood" standard at *Batson*'s step one.  According to Castellanos, the California state court's mere citation to *Trevino* shows not only that it "affirmed the trial court's denial of the *Batson*/*Wheeler* motion at step one of the *Batson* analysis," but also that it "held Mr. Castellanos to a higher standard than that required by *Batson* itself."  Castellanos therefore urges us to review de novo the California state court's resolution of his *Batson* claim.

We read the state court's decision differently, however. Although the California court cited *Trevino*, which we acknowledge is a pre-*Johnson* case, it is apparent from the state court's decision that it did not cite *Trevino* for the proposition that Castellanos attributes to it.  Rather, the court cited *Trevino* for the proposition that "[t]he trial court's determination is entitled to considerable deference because of the court's knowledge of local conditions and local prosecutors, powers of observation, understanding of trial techniques and judicial experience." *Castellanos*, 2007 Cal. App. Unpub. LEXIS 7397, at *14.  Indeed, the wording the California court used tracks, almost verbatim, the wording of

*Trevino* in that respect. Because citing *Trevino* for the proposition that the trial court should be afforded deference is not contrary to clearly established federal law, *cf. Hernandez v. New York*, 500 U.S. 352, 365–70 (1991), we conclude that the state court proceedings did not "resul[t] in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law." *See* 28 U.S.C. § 2254(d)(1).[6]

## C.

That the California Court of Appeal's decision was not "contrary to" clearly established federal law does not end our inquiry, however. "Once we conclude that the trial court has conducted an adequate inquiry under *Batson*, our review must shift from § 2254(d)(1) to a review of the reasonableness of the state court's factual determinations under § 2254(d)(2)." *Murray*, 745 F.3d at 1006 (citing *Jamerson*, 713 F.3d at 1225–26).

Neither party appears to dispute that Castellanos satisfied his burden to make a prima facie showing of purposeful

---

[6] The California Court of Appeal's description of the colloquy that occurred at trial after Castellanos made his *Batson* motion compels the same conclusion. That description makes clear, for example, that the court of appeal read the trial court's statement that "Well, there are four Hispanics excused," to be a statement in response to the prosecutor's request that the court first find that Castellanos had made the requisite prima facie showing at *Batson*'s step one. *See Castellanos*, 2007 Cal. App. Unpub. LEXIS 7397, at *12 ("The prosecutor noted that the trial court needed to find a prima facie showing, and the court said, 'Well, there are four Hispanics excused.' "). At that point, the court of appeal did not cite *Trevino*, nor did it need to: the court was not disposing of the case at step one. The very fact that the court of appeal reached *Batson*'s step three suggests the same.

discrimination, as is required at *Batson*'s step one. After he made that showing, the burden shifted to the prosecutor to offer race-neutral justifications for each challenged strike. Those justifications need not have been "persuasive, or even plausible"; at the second step of *Batson*, "the issue is the facial validity of the prosecutor's explanation." *Purkett v. Elem*, 514 U.S. 765, 768 (1995) (internal quotation marks omitted). The state trial court was then required, at step three, to evaluate the "persuasiveness" of the prosecutor's articulated reasons, *Miller-El v. Cockrell*, 537 U.S. 322, 338, 339 (2003) (*Miller-El I*), and "determine whether the defendant ha[d] established purposeful discrimination," *Batson*, 476 U.S. at 98. Pursuant to *Batson*, the trial court was obligated to "undertake a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Id*. at 93. "Side-by-side comparisons" of the venirepersons who were struck and those who were empaneled may serve as helpful "evidence tending to prove purposeful discrimination." *Miller-El v. Cockrell*, 545 U.S. 231, 241 (2005) (*Miller-El II*).

Where, as here, the trial court did not undertake a formal comparative juror analysis in the first instance, we must do so on collateral review. *Murray*, 745 F.3d at 1004–07. Our analysis under § 2254(d)(2) of the state court's order denying Castellanos's *Batson* motion is therefore twofold. *See Jamerson*, 713 F.3d at 1225.

> To begin, we must perform in the first instance the comparative analysis that the state court declined to pursue. Then, we must reevaluate the ultimate state decision in light of this comparative analysis and any other evidence tending to show purposeful

discrimination to decide whether the state was unreasonable in finding the prosecutor's race-neutral justifications to be genuine. In essence, we must assess how any circumstantial evidence of purposeful discrimination uncovered during comparative analysis alters the evidentiary balance and whether, considering the totality of the evidence, the state court's credibility determination withstands our doubly deferential review.

*Id.* at 1225–26. Because our inquiry under § 2254(d)(2) is limited to the "evidence presented in the State court proceeding," we cannot consider the post hoc justifications offered by Deputy District Attorney Coen. *See Pinholster*, 131 S. Ct. at 1400 n.7.[7]

On review, Castellanos takes issue with the state trial court's determination of no purposeful discrimination with respect to Venirepersons 4968, the Hispanic female from Santa Fe Springs; 3693, the Hispanic male from La Puente; and 6963, the Hispanic male from Montebello. He contends that the California Court of Appeal's decision on direct appeal was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Reviewing the state court's determination together with a "[s]ide-by-side compariso[n]" of the venirepersons at issue and the empaneled jurors, *see Miller-El II*, 545 U.S. at 241, and other,

---

[7] We can consider the DMV records, however. *See Jamerson*, 713 F.3d at 1226 (holding that *Pinholster* does not bar "consideration of evidence designed to reconstruct the racial composition of the jury venire").

relevant "circumstantial and direct evidence of intent" to discriminate, *see Batson*, 486 U.S. at 93, we agree.

We begin and end our analysis with Venirewoman 4968.[8] At trial, the prosecutor stated that he struck Venirewoman 4968 because

> she didn't have any children. The victim here is going to be a child testifying, so I want jurors to understand children, so I've kicked a lot of jurors who don't have children, and she had no children.

That reason, as the district court noted, is belied by the record. Venirewoman 4968 stated, in response to the only question that she and the other potential jurors had been asked, that she had two adult children. The prosecutor then asked about the occupations of her adult children, and she answered. Thus, unless the totality of other relevant circumstances in this case suggests a contrary conclusion, the prosecutor's factually erroneous reason can be construed as pretextual. *See McClaim v. Prunty*, 217 F.3d 1209, 1221 (9th Cir. 2000) ("Where the facts in the record are objectively contrary to the prosecutor's statements, serious questions about the legitimacy of a prosecutor's reasons for exercising peremptory challenges are raised." (citing *Caldwell v. Maloney*, 159 F.3d 639, 651 (1st Cir. 1998))).

Relevant circumstantial evidence tends only to further undermine the prosecutor's credibility, however. A side-by-

---

[8] Under *Batson*, "the elimination of even a single juror" based on race demands a retrial. *Green v. LaMarque*, 532 F.3d 1028, 1029 (9th Cir. 2008).

side comparison, for example, of Venirewoman 4968 to members of the empaneled jury suggests that the prosecutor's race-neutral justification for removing Venirewoman 4968 was pretextual. Three other venirepersons who also had no adult children—Jurors 7707, 7107, and 8243—were ultimately permitted to serve on the jury. Moreover, one of the empaneled jurors, Juror 0373, didn't even answer the question about whether he had adult children, and the prosecutor never followed up to clarify. *Cf. Miller-El II*, 545 U.S. at 246 (discrediting the prosecutor where he "asked nothing further about the influence his brother's history might have . . . as [he] probably would have done if the family history had actually mattered").

But even if the prosecutor's credibility weren't further undermined by that side-by-side comparison, the prosecutor's question—whether the venirepersons had "adult children"—itself lends little support for his proffered justification. The question whether the venireperson had "adult children" seems a rather odd way of getting at what the prosecutor purportedly sought to identify: whether the venireperson had experience with young children like the child witness who planned to testify.[9] If the prosecutor's purpose truly was to determine which venirepersons could "understand children," a broader initial question—for example, "Do you have any children?"—would have better served that purpose. *See Jamerson*, 712 F.3d at 1229 (noting that the reason for a peremptory strike must be "relevant"; that is, the prosecutor must "express a believable and articulable connection between the race-neutral characteristic identified and the desirability of a prospective juror"). As the

---

[9] The victim's brother, Joey, testified at trial. He was 12 years old at that time.

Supreme Court has stated, "The State's failure to engage in any meaningful voir dire examination on a subject the State alleges it is concerned about is evidence suggesting that the explanation is a sham and a pretext for discrimination." *Miller-El II*, 545 U.S. at 246.

Two additional pieces of circumstantial evidence are relevant to our analysis of the prosecutor's decision to strike Venirewoman 4968. First, as the California Court of Appeal noted in its opinion, the state trial court observed that "[i]t appears . . . that of the twelve jurors, seven are Hispanics, there are four Caucasians, and one Asian." *Castellanos*, 2007 Cal. App. Unpub. LEXIS 7397, at \*14 n.9. Our cases have acknowledged that the composition of the empaneled jury is relevant to the *Batson* inquiry. *See Turner v. Marshall*, 121 F.3d 1248, 1254 (9th Cir. 1997). Those cases have also cautioned, however, that that fact, without more, is insufficient to overcome the prima facie showing of purposeful discrimination that Castellanos already made, and cannot "salvage [the prosecutor's] discredited justification." *See id.* ("[A]lthough the fact that the prosecutor accepted four African Americans on the jury may be considered indicative of a nondiscriminatory motive, it is not dispositive. Where the prosecutor's explanation for striking a minority juror is unsupported by the record, empaneling other minority jurors will not salvage her discredited justification.").

The second piece of evidence is the fact that the prosecutor exercised only 12 of his 20 total peremptory strikes, leaving 8 unused. We have previously held that "the willingness of a prosecutor to accept minority jurors weighs against a finding of a prima facie case." *United States v. Chinchilla*, 874 F.2d 695, 698 n.4 (9th Cir. 1989) (citing *United States v. Montgomery*, 819 F.2d 847, 851 (8th Cir.

1987), for its holding that the petitioner had not established a prima facie case of purposeful discrimination when "the government . . . could have used its remaining peremptory challenges to strike" additional minority venirepersons but declined to do so). Thus, where the prosecutor declines to exercise additional peremptory strikes, permitting minority venirepersons ultimately to serve on the jury, the prosecutor's doing so may properly be considered in determining whether his earlier strikes were discriminatory. *Id.* But just as is the case with the composition of the empaneled jury, the number of peremptory strikes the prosecutor fails to use after a *Batson* motion has been made cannot alone undermine a showing of purposeful discrimination. *See, e.g.*, *Burks v. Borg*, 27 F.3d 1424, 1429 (9th Cir. 1994); *Palmer v. Estelle*, 985 F.2d 456, 458 (9th Cir. 1993). And, even when the remaining strikes are considered together with the composition of the empaneled jury, the two facts do not overcome a petitioner's already established showing of purposeful discrimination. *See Turner*, 121 F.3d at 1254, 1250 (reversing a district court's order denying an application for habeas relief even where four African Americans were empaneled and the prosecutor left unused 11 peremptory strikes).

We acknowledge that, under AEDPA, our review is "doubly deferential." *Jamerson*, 713 F.3d at 1226. We also acknowledge that, under *Batson*, intent to discriminate is an issue of fact that "largely will turn on an evaluation of credibility." 476 U.S. at 98 n.21; *see also Hernandez*, 500 U.S. at 364–65 ("There will seldom be much evidence bearing on [the issue of purposeful discrimination], and the best evidence often will be the demeanor of the attorney who exercises the challenge. . . . [E]valuation of the prosecutor's state of mind based on demeanor and credibility lies

peculiarly within a trial judge's province." (internal quotation marks omitted)). But where, as here, our comparative juror analysis reveals such significant evidence of pretext, our cases require us to conclude that the state court's finding to the contrary amounts to an "unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2); *see also Johnson v. Vasquez*, 3 F.3d 1327, 1331 (9th Cir. 1993) ("When there is reason to believe that there is a racial motivation for the challenge, neither the trial courts nor we are bound to accept at face value a list of neutral reasons that are either unsupported in the record or refuted by it. Any other approach leaves *Batson* a dead letter."). "Because just one racial strike calls for a retrial," *Kesser v. Cambra*, 465 F.3d 351, 369 (9th Cir. 2006), we need not reach Castellanos's arguments with respect to Venirepersons 3693 or 6963.[10]

## III.

For the foregoing reasons, we conclude that the district court erred in denying Castellanos's application for habeas relief. We therefore reverse the district court's judgment and remand with instructions to grant the application.

**REVERSED and REMANDED.**

---

[10] Even if we were to reach the merits of Castellanos's arguments with respect to Venirepersons 3693 or 6963, we note that at least one would compel the same conclusion. Although the prosecutor's reason for striking Venireman 6963—that he had connections to gang-related activity—was nondiscriminatory, the reason the prosecutor offered for striking Venireman 3693—that he "had trouble following directions in the beginning"—lacks any support in the record.