Filed 2/2/16  P. v. Miranda CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>CARLOS A. MIRANDA,<br><br>　　Defendant and Appellant. | 2d Crim. No. B255047<br>(Super. Ct. No. KA099679)<br>(Los Angeles County) |

　　Carlos A. Miranda was charged with felony evasion of a peace officer with willful or wanton disregard for safety of other persons or property.  (Veh. Code, § 2800.2, subd. (a).)  It was alleged that he had suffered a prior strike and five prior convictions.  (Pen. Code, §§ 1170.12, subds. (a)-(d), 667, subds. (b)-(i), 667.5, subd. (b).)[1]  Appellant represented himself at trial.

　　The jury convicted appellant of the felony evasion charge.  Appellant admitted the prior strike and prior convictions.  The trial court sentenced him to the low term of 16 months in state prison, doubled to 32 months for his prior strike.  The court struck the five prior convictions.

---

[1] All statutory references are to the Penal Code unless otherwise stated.

Appellant contends the trial court erred by: (1) failing to instruct the jury as to the Vehicle Code sections he allegedly violated; (2) denying his *Batson/Wheeler*[2] motion; (3) declining to exclude evidence of the uncharged offense of grand theft auto; (4) failing to instruct the jury with CALCRIM No. 375; (5) denying his motion for a new trial; and (6) committing cumulative error. We affirm.

FACTS

On October 5, 2012, Anselma Elias reported that her black Chevrolet Suburban had been stolen. Elias told Deputy Jeniffer Lund of the Los Angeles County Sheriff's Department that the theft occurred while she was loading groceries into the vehicle. Elias said it was stolen by a 40- to 45-year-old Hispanic male who wore a blue shirt and khaki pants.

The following evening, Deputy Ralph Polanco, Jr. saw appellant driving a black Chevrolet Suburban in the City of Industry. A license plate check revealed the vehicle had been stolen. Deputy Polanco followed appellant as he proceeded westbound on Valley Boulevard. After the deputy activated his lights and siren, appellant slowed down, moved to the right-hand side of the street but did not stop. Instead, he turned right onto the northbound lane of Vineland Avenue without signaling, in violation of Vehicle Code sections 21658 and 22107.

Deputy Sean Cariaga joined the pursuit. He activated his lights and siren and drove one or two vehicles behind Deputy Polanco on Vineland Avenue. Although appellant could have pulled over at a commercial building, he continued to proceed northbound. Deputy Polanco described appellant's driving as "slightly erratic." Appellant drove the car up onto a sidewalk, in violation of Vehicle Code section 21663, and then back down onto a driveway. As appellant approached Nelson Avenue, he violated Vehicle Code sections 21650 and 22107 by swerving against traffic into the southbound lane of Vineland Avenue without signaling that he was turning.

Appellant continued to drive on the wrong side of Vineland Avenue until, during a

_____

[2] *Batson v. Kentucky* (1986) 476 U.S. 79 (*Batson*); *People v. Wheeler* (1978) 22 Cal.3d 258 (*Wheeler*).

2

break in traffic, he swerved back into the northbound lane.  Finding himself locked in traffic, appellant stopped behind a parked car and ran from the vehicle.  He was detained at gunpoint approximately two or three houses away.  Deputies found a blue shirt in the vehicle.

On October 10, 2012, Detective Tracy Wright met with Elias at the police station.  Detective Wright showed her a photographic six-pack, which contained appellant's photograph.  Elias identified appellant as a family friend and said the person who stole her car was not in the photographs.  According to Detective Wright, Elias said that if appellant was the person driving the car, she was going to press charges.

Elias testified that she and appellant are friends and that he was not the person who stole her Suburban.  She denied saying she was going to press charges against appellant, but admitted she did not give him permission to drive her vehicle on October 5 or 6, 2012.

## DISCUSSION

### *Vehicle Code Section 2800.2 Instructions*

To convict appellant of felony evasion of a peace officer under Vehicle Code section 2800.2, subdivision (a), the jury was required to find that "during the pursuit, the defendant drove in a willful or wanton disregard for the safety of persons or property."  The trial court delivered a modified version of CALCRIM No. 2181, which stated that "driving with a willful or wanton disregard for the safety of persons or property includes but is not limited to causing damage to property while driving or committing three or more violations that are each assigned a traffic violation point.  [¶]  Each of the following violations is assigned a traffic violation point:  And that's Vehicle Code section 21658, which is unsafe lane change violation; Vehicle Code section 21663, which is driving on the sidewalk violation; Vehicle Code section 22107, which is a turn signal violation; and Vehicle Code section 21650, which is failure to drive on the right side of the roadway violation."  Appellant contends the trial court erred in failing to instruct the jury on the statutory elements of each of the four alleged traffic violations.

3

Appellant did not request the instruction he now contends was mandatory. Because the purported error does not amount to structural error, he forfeited this argument by failing either to object to the lack of an instruction on these elements or to request such instruction. (*People v. Dunkle* (2005) 36 Cal.4th 861, 897, disapproved on other grounds by *People v. Doolin* (2009) 45 Cal.4th 390, 421 & fn. 22.)

Even if the claim of error had been properly preserved, any error in failing to fully define the Vehicle Code violations was harmless. (See *People v. Watson* (1956) 46 Cal.2d 818, 836.) The trial court's abbreviated definitions accurately described each of the statutory violations, and the deputies' testimony was unequivocal and undisputed that appellant committed the violations during the pursuit.

Vehicle Code section 21663 states that "no person shall operate or move a motor vehicle upon a sidewalk except as may be necessary to enter or leave adjacent property." The trial court appropriately referred to it as the "driving on the sidewalk" violation. Deputy Polanco testified, without contradiction, that while appellant was fleeing the pursuing officers, he drove the vehicle "up the driveway/sidewalk" for a brief period, and then came back down before continuing northbound on Vineland Avenue. Appellant's claim that "it is reasonably probable" that the jury would have found that he did not violate Vehicle Code section 21663, if the jury had been read the entire statute, is both conclusory and speculative.

The same is true of the violation for "unsafe lane change." Vehicle Code section 21658 states that "[w]henever any roadway has been divided into two or more clearly marked lanes for traffic in one direction, the following rules apply: [¶] (a) A vehicle shall be driven as nearly as practical entirely within a single lane and shall not be moved from the lane until such movement can be made with reasonable safety." Here, the evidence was undisputed that while deputies were in pursuit, appellant swerved abruptly into oncoming traffic and proceeded to drive on the wrong side of the road before swerving back into the proper lane. Deputy Polanco testified this was a violation of Vehicle Code section 21658. No reasonable trier of fact could conclude otherwise.

4

Appellant's complaints about Vehicle Code sections 22107 and 21650 are similarly unavailing. Vehicle Code section 22107, which the trial court called "a turn signal violation," states that "[n]o person shall turn a vehicle from a direct course or move right or left upon a roadway until such movement can be made with reasonable safety and then only after the giving of an appropriate signal in the manner provided in this chapter in the event any other vehicle may be affected by the movement." Vehicle Code section 21650, which the court defined as the "failure to drive on the right side of the roadway violation," states that subject to exceptions that are inapplicable here, "a vehicle shall be driven upon the right half of the roadway." Deputy Polanco testified that appellant violated both sections when, while traveling northbound on Vineland Avenue, he abruptly swerved against traffic into the southbound lane without signaling. Appellant also violated Vehicle Code section 22107 when he failed to signal before making a right turn onto Vineland Avenue. Once again, appellant offered no contrary evidence. We conclude he has failed to show error.

*Batson/Wheeler*

Appellant contends the court erred in denying his *Batson/Wheeler* motion based on the prosecution's excusal of Juror No. 6182 (originally Juror No. 1). Appellant claims the prospective juror was dismissed in violation of his constitutional rights. We disagree.

The federal and state constitutions prohibit the use of peremptory challenges to exclude prospective jurors due to their race. (*Batson*, *supra*, 476 U.S. at p. 97; *Wheeler*, *supra*, 22 Cal.3d at pp. 276-277.) On a *Batson/Wheeler* motion, "the issue is not whether there is a pattern of systematic exclusion; rather, the issue is whether a particular prospective juror has been challenged because of group bias." (*People v. Avila* (2006) 38 Cal.4th 491, 549.) In the three-step constitutional analysis of peremptory challenges, the first step is for the defendant to make out a prima facie case by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose. If the defendant makes out a prima facie case, the second step is for the prosecutor to explain adequately the racial exclusion by offering permissible race-neutral justifications for the peremptory challenges. If the prosecutor offers adequate justifications, the third step is for the court

5

to decide whether the opponent of the peremptory challenges has proved purposeful racial discrimination. (*People v. Lenix* (2008) 44 Cal.4th 602, 612-613; see *People v. Scott* (2015) 61 Cal.4th 363, 383.)

Here, appellant raised a *Batson/Wheeler* objection after the prosecutor exercised peremptory challenges as to four Latino or Hispanic prospective jurors (Juror Nos. 8299, 4176, 6182 and 7858). Of the four prospective jurors, appellant specifically mentioned only Juror No. 8299 (formerly Juror No. 10). He noted that Juror No. 8299 has "been to college. He's smart. What is the race-neutral reasons she's dismissing all these Latinos. Don't I [get] a right to a jury of my peers?"

Without finding a prima facie showing of discrimination, the trial court asked the prosecutor if she wished to respond. When the prosecutor asked whether she should address all four prospective jurors, the trial court instructed her to discuss "the most recent peremptory challenge [Juror No. 7858]." The prosecutor explained that she had dismissed Juror No. 7858 because he had a brother who was arrested for evading a police officer and then sent to the U.S. Immigration and Naturalization Service. She also stated that "when I inquired of him on his ability to share, interact with a juror in jury deliberations, he indicated that his personality was of such that he did not share. He was more quiet and more reserved and so those are obviously qualities that a juror needs in engaging in jury deliberations." The trial court found this was "a fair exercise of a peremptory challenge" and was "certainly [race] neutral," noting the "juror does carry some baggage based on life experiences."

The trial court then noted that appellant had mentioned other Latino prospective jurors that he believed the prosecutor had excused based on race. Appellant again identified Juror No. 8299, a college student who had had some negative experiences with law enforcement, but who also wanted to work in law enforcement or attend law school. The court did not ask the prosecutor to provide reasons for his dismissal. It observed that although the juror "appeared to be pro law enforcement which I would not question [appellant's] exercise of a peremptory on that basis but he also certainly expressed

6

interest to the contrary that I don't think is based upon race completely in terms of excusing that person from further jury service on our case."

Next, the trial court elected to address Juror No. 6182, who appeared to be a Hispanic male from Azusa. Once again, the court did not ask the prosecutor to provide a reason for the dismissal. It noted the prospective juror, who works in banking, "doesn't have a whole lot of life experiences. Single, no jury duty, no children, no law enforcement ties. Kind of relatively new to this type of situation being a juror, being required to render a decision most certainly important to you, Mr. Miranda. I'm really keeping an eye on the issue that you're raising, . . . [b]ut I really don't think the [P]eople are excusing any of these jurors based solely upon racial or a cognizable group that would certainly deny you of a fair trial."[3]

As a general rule, when the trial court invites the prosecution to explain its reasons for exercising a particular peremptory challenge, the court implicitly finds a prima facie showing of discrimination. (See *People v. Jurado* (2006) 38 Cal.4th 72, 104 ["By asking the prosecutor to explain the peremptory challenges, the trial court here implicitly found that defendant had made a prima facie showing"].) Appellant argues that because the trial court asked the prosecutor if she wished to respond to appellant's initial *Batson/Wheeler* objection, there was an implicit finding of a prima facie showing of discrimination in this case. But when the prosecutor asked whether she should provide reasons for excusing all four prospective jurors, the court only instructed her to discuss "the most recent peremptory challenge [Juror No. 7858]." It did not invite her to comment on the others, finding instead that appellant had failed to make a prima facie showing of discrimination as to those jurors. Based on this record, we conclude that even if the court arguably did make an implicit prima facie finding as to Juror No. 7858, it did

---

[3] The record reflects that each side was accorded 10 peremptory challenges. The prosecution exercised three more challenges after excusing Juror Nos. 8299, 4176, 6182 and 7858. Appellant used all 10 of his challenges. The race or national origin of these other prospective jurors is unknown.

not extend to the other challenges. (See *People v. Scott*, *supra*, 61 Cal.4th at pp. 392-393.)

An appellate court affords "'considerable deference'" to a trial court's finding that a *Batson/Wheeler* motion fails to establish a prima facie case of group bias. (*People v. Howard* (1992) 1 Cal.4th 1132, 1155.) The reviewing court must affirm the trial court's denial of the motion "'[i]f the record "suggests grounds upon which the prosecutor might reasonably have challenged" the jurors in question[.]' [Citations.]" (*People v. Davenport* (1995) 11 Cal.4th 1171, 1200, abrogated on a different ground in *People v. Griffin* (2004) 33 Cal.4th 536, 555, fn. 5; see *People v. Battle* (2011) 198 Cal.App.4th 50, 60; *People v. Adanandus* (2007) 157 Cal.App.4th 496, 500-501.) Stated differently, if the appellate court "can divine any nondiscriminatory basis for the challenges," it must affirm the denial of the *Batson/Wheeler* motion. (*People v. Trevino* (1997) 55 Cal.App.4th 396, 409.)

As to the four peremptory challenges at issue here, the record establishes a reasonable, race-neutral basis for each challenge. Indeed, appellant does not contest the prosecution's excusal of Juror Nos. 8299, 4176 and 7858. His appeal is limited to Juror No. 6182. The trial court found that Juror No. 6182's answers during voir dire suggested a detachment from others based on the lack of a spouse or children, no connection with anyone who has ever been the victim of a crime or belonged to law enforcement, no prior jury service and no indication of any social interaction other than at work. This lack of life experience raised some concern as to whether Juror No. 6182 could deliberate and perhaps hold an opinion in the face of disagreement with others. "Limited life experience is a race-neutral explanation" (*People v. Perez* (1994) 29 Cal.App.4th 1313, 1328), and an attorney may reasonably conclude that a potential juror's "immaturity and inexperience with assuming weighty decisions and responsibilities" make one unsuitable. (*People v. Sims* (1993) 5 Cal.4th 405, 431, overruled on other grounds in *People v. Storm* (2002) 28 Cal.4th 1007, 1031-1032; *People v. Gonzales* (2008) 165 Cal.App.4th 620, 631.) Because a reasonable explanation for excusing Juror No. 6182 is apparent in the record, and because we view the trial court's ruling with "'considerable deference'"

8

(*People v. Howard*, *supra*, 1 Cal.4th at p. 1155), we conclude the *Batson/Wheeler* motion was properly denied.

We reject appellant's belated attempt to engage in a comparative analysis of Juror No. 6182 to others who actually served on the jury. A reviewing court need not engage in a comparative juror analysis where, as here, the trial court has denied the defendant's *Batson/Wheeler* motion after concluding the defendant failed to establish a prima facie case of discrimination. (*People v. Bonilla* (2007) 41 Cal.4th 313, 350 [declining to employ comparative juror analysis in a first-stage *Batson/Wheeler* case]; accord *People v. Carasi* (2008) 44 Cal.4th 1263, 1295; *People v. Howard* (2008) 42 Cal.4th 1000, 1019-1020.)

*Evidence of Vehicle Theft*

At the beginning of trial, appellant moved under Evidence Code section 352 to exclude evidence related to the uncharged act of grand theft auto. The trial court denied the motion, finding the evidence was admissible to prove motive for evading an officer. Appellant asserts this was error.

"The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) Evidence that a defendant committed an uncharged crime is admissible if relevant to prove the defendant's motive in the instant case. (Evid. Code, § 1101, subd. (b).)

Here, there is no question that evidence of the Suburban's theft was highly relevant to two issues: (1) Deputy Polanco's reason for deciding to stop appellant and (2) the motivation for his flight. As the trial court told appellant, the evidence of motive is "sometimes imperative in the sense that explaining why you may have engaged in the conduct that you allegedly engaged in; that is, doing everything in your power to avoid apprehension by police."

Furthermore, the theft evidence that was admitted in the prosecution's case did not identify appellant as the thief. Deputy Polanco testified on direct examination that a

9

license plate check of the vehicle revealed that it had been reported stolen. He did not state that appellant stole the vehicle. It was appellant who contested the thief's identity when he called the victim as a defense witness. The prosecution properly inquired, in rebuttal, about the reliability of the victim's identification of the thief and her apparent attempt to shield appellant from liability for the act. Appellant did not object to the admission of that evidence.

Finally, any error in admitting the theft evidence is harmless because of the uncontradicted proof that appellant committed the charged offense. The evidence was overwhelming that appellant, while attempting to elude pursuing deputies, drove in a willful or wanton disregard for the safety of persons or property. (Veh. Code, § 2800.2, subd. (a).)

### Claimed Failure to Instruct with CALCRIM No. 375

Appellant contends the trial court had a duty to instruct the jury with CALCRIM No. 375. We disagree.

CALCRIM No. 375 limits the use of uncharged crimes and acts of misconduct to instances where it might show intent, motive, knowledge, intent, plan or scheme. Appellant claims he requested the instruction when, during voir dire, he asked the trial court to admonish the jury that the prosecution is going to introduce evidence of a grand theft auto charge that was dismissed. The court responded that the request was premature. It stated: "We have to wait until we hear all the evidence before we can finalize our instructions and decide what the jury is entitled to hear and what they are not entitled to hear. But, again, that is a battle for a different point in this war. So let's wait and fight it at the appropriate time." Appellant failed to raise the issue at that time, thereby forfeiting his request. (See *People v. Freeman* (1994) 8 Cal.4th 450, 495; *People v. Montiel* (1993) 5 Cal.4th 877, 928, fn. 23.)

Except in extraordinary cases, a trial court has no duty to give a sua sponte instruction on the limited admissibility of evidence. (*People v. Rogers* (2006) 39 Cal.4th 826, 864 (*Rogers*).) An extraordinary case exists where "'evidence of past offenses is a dominant part of the evidence against the accused, and is both highly prejudicial and

minimally relevant to any legitimate purpose.'" (*Ibid.*, quoting *People v. Collie* (1981) 30 Cal.3d 43, 64.)

This case does not present an extraordinary situation. As previously discussed, the theft evidence was admitted to explain why the deputies decided to detain appellant and to show his motivation for attempting to evade detention. The evidence of the uncharged theft offense was a small part of the prosecution's evidence against appellant, was not unduly prejudicial and was highly relevant to material issues. Under these circumstances, the court did not have a sua sponte duty to give the limiting instruction. (See *Rogers*, *supra*, 39 Cal.4th at p. 864.) And even if it did have a duty, the failure to give the instruction would be harmless given the uncontroverted evidence that appellant committed the charged offense.

*Motion for New Trial*

Appellant contends his motion for new trial should have been granted because he did not have the ability to listen to the CD of the deputies' radio transmissions while he presented his defense. He claims the recordings, which described the pursuit as it took place, would have impeached Deputy Polanco's trial testimony that he activated his siren while pursuing appellant.

In his motion, appellant argued that the radio recordings proved that if Deputy Polanco activated his siren at all, it was after the vehicle pursuit and perhaps not until the foot pursuit. The trial court acknowledged that if appellant's assertion was correct, it could support a motion for new trial. After listening to the recordings, however, the court determined their content was inculpatory, rather than exculpatory. It found, as a factual matter, that Deputy Polanco activated his siren during the pursuit. It stated: "I listened to [the recordings] over and over again because I wanted to make certain that I could hear any sirens in the background of the pursuing deputy during the course of the pursuit. And I was able to do that indeed. And unfortunately, Mr. Miranda, my understanding of the content of the audio is different than yours because I did hear the siren in the background during the course of the pursuit but before you were captured on foot . . . ." The court also found that other sirens were audible and may have been louder.

11

Our review of the radio recordings supports the trial court's findings. The recordings reveal that at least one siren was audible after Deputy Polanco informed the dispatcher he was about to conduct a traffic stop of appellant by "light[ing] him up." Appellant argued the siren was from another patrol car, but the court declined to "speculate that that siren was coming from a unit other than the one Polanco was operating, who was the pursuing deputy."

"'The determination of a motion for a new trial rests so completely within the court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears.'" (*People v. Williams* (1988) 45 Cal.3d 1268, 1318; see *People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 127.) Given that the content of the radio recordings is consistent with Deputy Polanco's testimony, we conclude the trial court did not abuse its discretion by denying a new trial.

*Cumulative Error*

Appellant also claims cumulative error. Because we have concluded that all his claims of error are meritless or harmless, there is no cumulative error. (*People v. Avila* (2006) 38 Cal.4th 491, 608.)

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

PERREN, J.

We concur:

GILBERT, P. J.

YEGAN, J.

12

Mike Camacho, Jr., Judge

Superior Court of Los Angeles County

_____

Esther K. Hong, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, David F. Glassman, Deputy Attorney General, for Plaintiff and Respondent.