Filed 5/10/16  P. v. Jones CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

|  |  |
|---|---|
| THE PEOPLE, | C078416 |
| Plaintiff and Respondent, | (Super. Ct. No. MF036597A) |
| v. | |
| JESSE RAY JONES IV, | |
| Defendant and Appellant. | |

A jury found defendant Jesse Ray Jones IV guilty of possession of a controlled substance for sale (Health & Saf. Code, § 11378) and unlawful possession of ammunition (Pen. Code, § 30305, subd. (a)(1)).  The trial court found true allegations that defendant had two prior convictions for possession of a controlled substance for sale (Health & Saf. Code, § 11307.2, subd. (c)) and that he had served a prior prison term (Pen. Code, § 667.5, subd. (b)).  Sentenced to five years in prison, defendant appeals.

He contends the trial court committed error under *Batson v. Kentucky* (1986) 476 U.S. 79 [90 L.Ed.2d 69] (*Batson*) and *People v. Wheeler* (1978) 22 Cal.3d 258 (*Wheeler*)

1

by finding no purposeful discrimination based on the prosecutor's use of peremptory challenges during jury selection to excuse three women who were or appeared to be African-American. He further contends the trial court erred in denying his motion for a mistrial based on the admission of undisclosed and prejudicial evidence. We find no error and affirm.

## FACTS

*The Crimes*

Detectives Osborn, Avakian, and Garcia from the Manteca Street Crimes Unit were on patrol near defendant's residence and saw defendant and a woman standing inside the garage. The detectives decided to perform a probation search of defendant. Defendant had a baggie with a white substance in his hand. The detectives found two other bags containing a white substance and a digital scale in the garage. They found no indicia of personal use. A search of the house revealed a box of ammunition in a hallway closet.

A criminalist weighed and analyzed the contents of the three bags. He found 11.208 grams, 1.798 grams, and .740 gram of methamphetamine.

Detective Armen Avakian, an expert in the possession of narcotics for sale, testified to his opinion that defendant possessed the drugs for sale. His opinion was based on the amount of methamphetamine, the scale, and the absence of a pipe, needle, or other means of ingesting the drug.

In his defense, defendant testified he possessed the methamphetamine for personal use; he had purchased enough to last a week. He admitted he used to sell drugs, but claimed he no longer sold. A father figure for defendant testified he had seen defendant under the influence of methamphetamine in the last year. As for the ammunition, a close friend testified that he himself had left it at defendant's house a year before.

2

*Jury Selection*

The People used the first three peremptory challenges to excuse prospective jurors C., J., and A. C. was a postal clerk; her father had been murdered 25 years before and her brother had used drugs, but had been clean for 14 years. J. was a medical assistant at Kaiser. Her cousin had faced similar drug charges two years ago and she knew several others who had used illegal drugs. A. worked as a nurse at the state prison hospital in Stockton.

The prosecutor questioned the prospective jurors on the concept of constructive possession. He asked C. about the concept that one individual did not have to hold something or have it on his or her person to possess it. C. responded, "I don't know." She raised the scenario of borrowing someone's car with a firearm in it and getting pulled over for a ticket. If that meant she possessed the gun, "I don't totally agree with that." She agreed with the prosecutor that she might have an issue with constructive possession. J. said she agreed with C. as to the scenario of several people in a car with an illegal item. She agreed with the prosecutor's statement that she would have a hard time following the law to find possession when the person did not actually hold the item or have it on his person.

After the prosecutor excused C., J., and A., the defense made a *Batson/Wheeler* objection, claiming the prosecutor had excused three African-American women and defendant was an African-American man. Counsel noted the small number of African-American individuals in the jury pool. She claimed there was only one left in the box and one or two in the audience; the majority of African-Americans had been excused.

The trial court found the defense had failed to make a prima facie case of discrimination, noting A. did not appear to be African-American. The court invited the prosecutor to state the basis for his challenges.

The prosecutor stated he excused C. because her brother had been addicted to drugs, she gave him dirty looks and gestures, such as eye-rolling and being

nonresponsive, and she had a hard time with the concept of constructive possession. He excused J. because she knew several people who use illegal drugs, had a cousin facing similar charges two years ago, a family member had been murdered, and she had a hard time with constructive possession. He excused A. because she worked in a state prison hospital and his experience was that such people have a tendency to be lenient and sympathetic to defendants.

At the conclusion of trial the prosecutor put on the record that the jury had contained two African-Americans. The court noted that was a correct statement.

### DISCUSSION

### I

### *Batson/Wheeler Error*

Defendant contends the trial court erred in finding that he had not made a prima facie showing of discriminatory intent in the prosecutor's first three peremptory challenges. He argues the prosecutor excused only African-Americans, or one who appeared to be African-American, there were few African-Americans in the jury pool, and none of the excused jurors said she could not follow the law.[1]

"Both the state and federal Constitutions prohibit the use of peremptory strikes to remove prospective jurors on the basis of group bias. [Citations.] The now familiar *Batson*/*Wheeler* inquiry consists of three distinct steps. First, the opponent of the strike must make out a prima facie case by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose in the exercise of peremptory challenges. Second, if the prima facie case has been made, the burden shifts to the proponent of the

---

[1] Defendant also relies on a comparative analysis of the excused jurors' responses to those of selected jurors. As defendant recognizes, our Supreme Court has rejected using a comparative juror analysis in the first stage of the *Batson*/*Wheeler* analysis. (*People v. Bonilla* (2007) 41 Cal.4th 313, 350.) Defendant explains that he presents the issue to preserve it for further review.

4

strike to adequately explain the basis for excusing the juror by offering permissible, nondiscriminatory justifications. Third, if the party has offered a nondiscriminatory reason, the trial court must decide whether the opponent of the strike has proved the ultimate question of purposeful discrimination. [Citation.]" (*People v. Scott* (2015) 61 Cal.4th 363, 383 (*Scott*).)

"Although the question at the first stage concerning the existence of a prima facie case depends on consideration of the entire record of voir dire as of the time the motion was made [citation], we have observed that certain types of evidence may prove particularly relevant. [Citation.] Among these are that a party has struck most or all of the members of the identified group from the venire, that a party has used a disproportionate number of strikes against the group, that the party has failed to engage these jurors in more than desultory voir dire, that the defendant is a member of the identified group, and that the victim is a member of the group to which the majority of the remaining jurors belong. [Citation.] A court may also consider nondiscriminatory reasons for a peremptory challenge that are apparent from and 'clearly established' in the record [citations] and that necessarily dispel any inference of bias. [Citations.]" (*Scott, supra,* 61 Cal.4th at p. 384.)

When a trial court denies a *Batson/Wheeler* motion because it finds defendant failed to establish a prima facie case of group bias, we consider the entire record of voir dire and affirm if the record suggests grounds for a reasonable challenge of the jurors in question. (*People v. Panah* (2005) 35 Cal.4th 395, 439 (*Panah*).) The reviewing court "accord[s] particular deference to the trial court as fact finder, because of its opportunity to observe the participants at first hand." (*People v. Jenkins* (2000) 22 Cal.4th 900, 993-994.) Where, as here, the trial court has determined that no prima facie case of discrimination exists, then allows or invites the prosecutor to state reasons for excusing the juror but refrains from ruling on the validity of those reasons, our review is limited to the first-stage ruling. (*Scott, supra,* 61 Cal.4th at pp. 386.)

5

In this case, defendant's *Batson/Wheeler* claim "was particularly weak as it consisted of little more than an assertion that a number of prospective jurors from a cognizable group had been excused.  Such a bare claim falls far short of 'rais[ing] a reasonable inference that the opposing party has challenged the jurors because of their race or other group association.' [Citation.]" (*Panah, supra,* 35 Cal.4th at p. 442.)

Here, the record clearly establishes nondiscriminatory reasons to excuse C., J., and A. that dispel any inference of discrimination.  Both C. and J. agreed with the prosecutor's conclusion that they would have difficulty applying the law of constructive possession, a key concept in this case.  Both also had family or friends who used illegal drugs, suggesting possible sympathy for defendant.  J.'s cousin had recently faced similar charges; the arrest of the prospective juror or a close relative is a neutral reason for exclusion.  (*Panah, supra,* 35 Cal.4th at p. 442; *People v. Allen* (1989) 212 Cal.App.3d 306, 315-316 [peremptory challenge properly used where close friend of prospective juror had been arrested for selling drugs].)  The trial court did not believe A. was African-American, so excusing her did not show group bias.  Further, she was a nurse at a prison hospital.  "Occupation can be a permissible, nondiscriminatory reason for exercising a peremptory challenge.  [Citation.]" (*People v. Rushing* (2011) 197 Cal.App.4th 801, 811.)  In *People v. Trevino* (1997) 55 Cal.App.4th 396, at page 411, defendant failed to make a prima facie case where the challenged jurors were all Hispanic, but they or their spouses worked in health care.

Finally, the seated jury contained two African-Americans.  That the jury contained members of the group allegedly discriminated against, while not conclusive, indicates good faith in exercising peremptory challenges.  (*People v. Stanley* (2006) 39 Cal.4th 913, 938, fn. 7; *People v. Turner* (1994) 8 Cal.4th 137, 168, abrogated on another point in *People v. Griffin* (2004) 33 Cal.4th 536, 555, fn. 5.)

6

II

*Denial of Mistrial*

Detective Avakian testified the detectives went to defendant's residence because they had received information that he was selling methamphetamine. The defense objected as hearsay and moved to strike. The court immediately instructed the jury not to use this evidence for the truth of the matter, "but only for purposes of understanding the motivation [of] this witness in going to that location on that date."

At the next break in proceedings, defendant moved for a mistrial, complaining the evidence of information that defendant was selling had not been disclosed. Counsel argued that if the matter had been litigated, the evidence would have been excluded. The court ruled the statement by Avakian was not incurably prejudicial and denied the motion for mistrial. Defendant contends this ruling was error.

A trial court should grant a motion for mistrial "only when ' "a party's chances of receiving a fair trial have been irreparably damaged" ' [citation], that is, if it is 'apprised of prejudice that it judges incurable by admonition or instruction' [citation]. 'Whether a particular incident is incurably prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on mistrial motions.' [Citation.] Accordingly, we review a trial court's ruling on a motion for mistrial for abuse of discretion. [Citation.]" (*People v. Avila* (2006) 38 Cal.4th 491, 573.) Under this standard, a trial court's ruling will not be disturbed, and reversal of the judgment is not required, unless "the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice [citation]." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.)

We find no abuse of discretion. Detective Avakian's statement was brief, no more inflammatory than the other evidence at trial, and followed immediately by a limiting instruction. "[W]e presume the jury faithfully followed the court's limiting instruction. [Citation.]" (*People v. Ervine* (2009) 47 Cal.4th 745, 776.) In arguing that the statement

7

was so prejudicial that no admonition could cure it, defendant relies on cases where a witness improperly referred to the defendant's criminal history.  These cases are inapposite here where defendant's criminal history was before the jury; the parties stipulated that defendant had two prior convictions for possession of methamphetamine for sale.

## DISPOSITION

The judgment is affirmed.


            /s/
        Duarte, J.



We concur:


    /s/
Robie, Acting P. J.


    /s/
Renner, J.


8